# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

MARK GOULD,                          )
                                     )         Case Nos. 1:22-cv-311; 1:19-cr-39
    *Petitioner*,                )
                                     )         Judge Travis R. McDonough
v.                                   )
                                     )         Magistrate Judge Christopher H. Steger
UNITED STATES OF AMERICA,            )
                                     )
    *Respondent*.                )

---

## MEMORANDUM OPINION

---

Before the Court is Petitioner Mark Gould's motion[1] to vacate, set aside, or correct his

sentence pursuant to 28 U.S.C. § 2255 (Docs. 1, 4 in Case No. 1:22-cv-311; Docs. 74–75 in Case

No. 1:19-cr-39). For the reasons that follow, the Court will **DENY** Petitioner's motion.

## I.      BACKGROUND

On February 26, 2019, a grand jury returned a one-count indictment charging Petitioner

with knowingly using a facility or means of interstate commerce to attempt to persuade, induce,

---

[1] Though the most recently filed § 2255 motion is docketed as a motion to file a successive § 2255 motion, the Court has not yet ruled on Petitioner's initial motion, nor has the statute of limitations for filing a § 2255 motion elapsed. Therefore, it will instead consider it as an amendment to Petitioner's original motion. According to the Sixth Circuit, "[a] motion to amend a §2255 motion is governed by Federal Rule of Civil Procedure 15(a), which provides that leave to amend a pleading should be 'freely give[n] . . . when justice so requires." *United States v. Clark*, 637 F. App'x 206, 208 (6th Cir. 2016) (quoting Fed. R. Civ. P. 15(a)) (alteration in original). Here, the additional petition was filed within the one-year statute of limitations and thus will be considered alongside Petitioner's initial motion. *See United States v. Thomas*, 221 F.3d 430, 436 (3d Cir. 2000) ("[A] party cannot amend a § 2255 petition to add a completely new claim after the statute of limitations has expired.").

entice, or coerce a minor to engage in sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. §2422(b) ("Count One"). (Doc. 1, at 1 in Case No. 1:19-cr-39.) On June 18, 2019, Petitioner and the Government entered into a plea agreement in which Petitioner agreed to plead guilty to Count One of the indictment. (Doc. 19 in Case No. 1:19-cr-39.) According to the agreement, the Government did not make any promises to Petitioner "as to what the sentence will be in this case." (*Id.* at 4.) On March 4, 2020, United States District Judge Curtis L. Collier sentenced Petitioner to a 210-month term of imprisonment followed by a ten-year term of supervised release. (Doc. 53 in Case No. 1:19-cr-39.)

Petitioner appealed his sentence to the Sixth Circuit Court of Appeals, and, on April 7, 2022, the court affirmed Petitioner's sentence. (Doc. 68 in Case No. 1:19-cr-39.) The two legal issues addressed in the Sixth Circuit's opinion were: "(1) whether a FaceTime call constitutes a 'visual depiction' under U.S.S.G. § 2G1.3(c)(1), and (2) whether responding to a notice or advertisement 'involved' 'offering or seeking by notice or advertisement" under that same provision.' (Doc. 68, at 3 in Case No. 1:19-cr-39.)

In affirming the Court's determinations based on the language of the provision, the Sixth Circuit summarized the relevant facts of Petitioner's case as follows:

> [I]n 2018 Defendant-Appellant Mark Gould responded to an online advertisement that offered to allow someone to "engage in a live online session with an 8-year-old in exchange for child pornography." That advertisement included a photo of a minor. Gould initiated the conversation, writing: "Hey I saw your daughter in the tub. I would live [sic] to facetime with you two. Hit me up thanks." Gould later wrote, "[I]f you want to make me the [happiest] guy [on] the planet, [I] would love to facetime with your daughter." Gould offered to send money to the individual through PayPal or Apple Pay. At this point, Gould was speaking to a real individual, but law enforcement later apprehended that person. Gould then began speaking with an undercover agent from the Department of Homeland Security who had assumed the arrested person's online identity. The agent offered to let "his" minor daughter have sex with Gould, explaining that he would "video" the encounter. Gould replied, "That sounds amazing I would pay for that:). Can I FaceTime with her sometime?"

Throughout December, Gould sent the undercover agent links to child pornography, as well as Gould's password to a cloud account with thousands of images of minors, including toddlers. In discussing his hoped-for visit with the undercover agent's "daughter," Gould explained that "I would gladly do your daughter while you taped it" and that "[t]he thought of being able to see your daughter on [c]am is like a dream for me." Through December and January, the two continued to discuss Gould's planned travel from the State of Washington to Tennessee. On January 7, 2019, the undercover agent told Gould that he would like to "video" Gould's encounter with his daughter, to which Gould "indicated he had some HD camcorders, but that his phone was amazing." Days later, Gould said that "he had a good editing program in order to blur faces out on videos."

On January 24, 2019, Gould flew to Tennessee where he met with an undercover agent in Chattanooga. Gould presented a blood test indicating he had no sexually-transmitted diseases. The undercover agent asked Gould "if he would like to take a video home with him[,] and [Gould] stated they had not discussed that." At that point, law enforcement arrested Gould. Under interrogation, Gould admitted that he responded to the advertisement and confirmed that he saw the images of the 8-year-old in that initial advertisement.

(*Id.* at 4–5.)

On December 12, 2022, Petitioner filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 1 in Case No. 1:22-cv-311; Doc. 74 in Case No. 1:19-cr-39.) Shortly thereafter, Petitioner amended his motion. (Doc. 4 in Case No. 1:22-cv-311; Doc. 75 in Case No. 1:19-cr-39.) Petitioner's motion is ripe for the Court's review.

## II.    STANDARD OF LAW

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

# III.    ANALYSIS

## A.    Timeliness of Defendant's Motion

Section 2255(f) imposes a one-year limitations period on all petitions for collateral relief under § 2255 running from the latest of:  (1) the date when the judgment of conviction becomes final; (2) the date when the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date when the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date when the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2255(f).

In this case, Petitioner's motion is timely.  The judgment from Petitioner's sentencing became final on July 6, 2022, ninety days after he could have petitioned for certiorari to the Supreme Court for a review of the Sixth Circuit's order affirming his judgment.  *See Sanchez-Castellano v. United States*, 358 F.3d 424, 426 (6th Cir. 2004) ("When a federal criminal defendant takes a direct appeal to the court of appeals, his judgment of conviction becomes final for § 2255 purposes upon the expiration of the 90-day period in which the defendant could have petitioned for certiorari to the Supreme Court, even when no certiorari petition has been filed.")  Petitioner filed his § 2255 motion on December 12, 2022, which he amended on April 28, 2023.  (*See* Docs. 68, 74–75 in Case No. 1:11-cr-41; Docs. 1, 4 in Case No. 1:19-cv-376.)  Therefore, the motion is timely.

**B.      Whether the Court Should Hold an Evidentiary Hearing**

In ruling on a motion made pursuant to § 2255, the Court must determine whether an evidentiary hearing is necessary.  "An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief."  *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quoting *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012)); *see also* 28 U.S.C. § 2255(b).  "The burden for establishing entitlement to an evidentiary hearing is relatively light, and where there is a factual dispute, the *habeas* court must hold an evidentiary hearing to determine the truth of the petitioner's claims."  *Martin*, 889 F.3d at 832 (citations and internal quotations omitted).  While a petitioner's "mere assertion of innocence" does not entitle him to an evidentiary hearing, the district court cannot forego an evidentiary hearing unless "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  *Id*.  When petitioner's factual narrative of the events is not contradicted by the record and not inherently incredible and the government offers nothing more than contrary representations, the petitioner is entitled to an evidentiary hearing.  *Id*.

In this case, the Court will not hold an evidentiary hearing, because the record conclusively establishes that Petitioner is not entitled to the relief he seeks.  Petitioner first argues that "[t]he supervise[d] release term [of his sentence] is illegal, in violation of double jeopardy[.]"  (Doc. 1, at 1 in Case No. 1:22-cv-311.)  The best the Court can understand, Petitioner contends that, because a supervised-release term "cannot begin until after the defendant is released from prison," it constitutes a separate, additional penalty for his actions in violation of the Double Jeopardy clause of the United States Constitution.  (*Id*. at 2–3.)  But as Petitioner himself seems to concede, no court has arrived at such a conclusion.  (*See id.* at 5

("[T]he constitutionality of [supervised] release has never been genuinely tested.").)  Rather, in *Johnson v. United States*, the Supreme Court affirmed that "district courts have the authority to order terms of supervised release following reimprisonment[,]" and that "postrevocation penalties [are attributable] to the original conviction."  529 U.S. 694, 701, 713 (2000).  Petitioner argues *Johnson* holds "no precedential value" because "[t]he Court raised the issue on its own, without the benefits of briefs [sic]" and that "double jeopardy was not implicated" in the case. (Doc. 1, at 4 in Case No. 1:22-cv-311.)  On the contrary, the *Johnson* Court explicitly addressed double-jeopardy concerns in its opinion, noting that "treating postrevocation sanctions as part of the penalty for the initial offense . . . avoids [double jeopardy] difficulties."  529 U.S. at 700 (citations omitted).  Therefore, Petitioner is not entitled to relief based on the argument that post-incarceration terms of supervision violate his constitutional rights.

Petitioner also resuscitates many of the same arguments rejected by the Sixth Circuit on appeal.  (Doc. 75, at 4, 5, 7–8 in Case No. 1:19-cr-39.)  However, "[i]t is . . . well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) (citing *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); and then citing *Davis v. United States*, 417 U.S. 333, 345 (1974)). Because Petitioner does not point to any such "highly exceptional circumstances" warranting relitigating issues already addressed by the Sixth Circuit, the Court will not revisit them.

To the extent Petitioner advances an issue not already addressed on appeal, he argues his sentence was improperly "enhanced from [U.S.S.G §] 2G3.1 to 2G1.2," and that the latter enhancement is intended "for people convicted of production."  (Doc. 75, at 7 in Case No. 1:19-cr-39.)  The provision Petitioner cites to is not mentioned in his second revised presentence

report (Doc. 50 in Case No. 1:19-cr-39); in fact, that provision was deleted by consolidation with § 2G1.1 on November 1, 1996. If Petitioner intends to refer instead to § 2G2.1, that enhancement was properly applied because Petitioner sought, by notice, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct. (Doc. 50, at 10 in Case No. 1:19-cr-39); U.S.S.G. § 2G2.1. Apart from wholly denying that he ever "interact[ed] with an officer posing as a minor," Petitioner does not offer any facts or evidence that would suggest that application of enhancements under this provision was inappropriate. (Doc. 4, at 8 in Case No. 1:22-cv-311.) Because this assertion amounts to a "mere assertion of innocence" and is directly contradicted by the record, it does not entitle Petitioner to an evidentiary hearing to determine the truth of his claims. *See Martin*, 889 F.3d at 832.

Petitioner also cites to an Eleventh Circuit case, *United States v. Caniff*, 916 F.3d 929 (11th Cir. 2019), and argues that it supports his argument that "sending an email to one person does not constitute posting a notice or advertisement seeking a minor for commercial child pornography." (Doc. 4, at 5 in Case No. 1:22-cv-311.) But it is unclear how the case, which is not binding on this Court, supports such a position. *See Caniff*, 916 F.3d at 936 (citing *United States v. Long*, 304 F. App'x 982, 986 (3d Cir. 2008) ("Courts have held that for purposes of that sentencing guideline, "notice" includes one-on-one communications as emails and instant messaging.").  !!

Because the record conclusively shows that Petitioner is not entitled to relief, no evidentiary hearing is required. Accordingly, the Court will **DENY** Petitioner's § 2255 motion.

### C. CONCLUSION

For the reasons stated herein, the Court **DENIES** Petitioner's § 2255 motion. (Docs. 1, 4 in Case No. 1:22-cv-311; Docs. 74–75 in Case No. 1:19-cr-39). Should Petitioner give timely notice of an appeal from this Order, such notice will be treated as an application for a certificate of appealability, which is hereby **DENIED** since he has failed to make a substantial showing of the denial of a constitutional right or "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court [is] correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *see also* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Additionally, the Court has reviewed this case pursuant to Rule 24 of the Federal Rules of Appellate Procedure and hereby **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is **DENIED**. *See* Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**